**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

**UNITED STATES OF AMERICA,**
**Plaintiff,**

**v.**

**WILLIAM COMBS,**
**Defendant.**

**CRIMINAL NO. 5:26-27-KKC-MAS-1**

**OPINION AND ORDER**

This matter is before the Court on Defendant William Combs' motion to suppress evidence as fruits of an illegal stop and search by law enforcement. (R. 20.) The matter was referred to Magistrate Judge Matthew A. Stinnett for a hearing and a report and recommendation. (R. 26.) After the hearing, Judge Stinnett submitted a report recommending the Court deny Combs' motion. (R. 32.) Defendant Combs timely objected, asking the Court to reject the Judge Stinnett's recommendations and grant his motion to suppress all evidence obtained from the stop, frisk, and search. (R. 33.) The Court has reviewed Judge Stinnett's report and recommendation, the audio recording of the suppression hearing, body worn camera footage submitted as exhibits, and the briefings filed regarding this matter. For the following reasons, Combs' objections to Judge Stinnett's recommendation are overruled and his motion to suppress is denied.

## I. FACTUAL BACKGROUND

On December 8, 2025, the Garrard County Sheriff's Office ("Sheriff's Office") conducted a counternarcotics operation, which led to the arrest of Defendant William Combs and the seizure of narcotics, drug paraphernalia, and a firearm in Combs' possession. Prior to Combs' arrest, the

Sheriff's Office was working with a "confidential source"[1] ("CS") to investigate local drug trafficking activity and had directed the source to set up a drug delivery in Garrard County. (R. 23-1 at ECF p. 5.) At approximately 1:30 p.m. on December 8th, the CS alerted law enforcement that William Combs had agreed to deliver approximately four (4) ounces of fentanyl to a Citgo gas station just east of Lancaster, KY. (*Id.*) The source described Combs as a high-level drug trafficker who was known to transport narcotics in and around Richmond, KY. (R. 32 at 2.) The source also provided information about Combs' personal vehicle, an El Camino. (*Id.*)

Based on the CS's information, the Sheriff's Office reviewed Combs' criminal history (confirming he had prior felony convictions for gun and drug related activity), matched photographs of Combs provided by the CS with state driving records, and surveilled Combs' residence (verifying that he drove an El Camino). (*Id.*) The CS also remained in contact with sheriff's deputies throughout the afternoon, providing real-time updates on Combs' travel toward Lancaster and copies of text messages with Combs, including a photograph of the narcotics to be purchased. (*Id.* at 2–3; *see also* R. 32-1 at ECF p. 8.) The CS did not however, confirm which vehicle Combs would be driving or use Combs' name specifically in any of the text messages forwarded.[2] (R. 20 at 2.)

Sheriffs' deputies staged on foot and in vehicles near the designated Citgo station and waited for Combs. (R. 23-1 at ECF p. 5.) Later that evening, when a white Ford truck pulled into the station, the Sheriff's Office received a message from the CS that Combs texted he had arrived. (*Id.*) Not recognizing the vehicle, one sheriff's deputy ran the truck's license plate number through

[1] Garrard County Sheriff Skeens testified during the suppression hearing that his office characterized this person as a "confidential source" instead of a "confidential informant" because the source was not asked to buy narcotics with money provided by law enforcement or wear audio/video recording equipment when interacting with suspects. The sheriff also testified his office had worked with this confidential source on one prior occasion, which led to a successful arrest based on credible intelligence.

[2] In screen captures from the CS's purported text exchanges with Combs, the drug contact is listed simply as "Pin." (R. 23-1 at ECF p. 8.)

the NCIC system and confirmed it was registered to an owner in Richmond, KY. (*Id.*) As another deputy began to approach the truck on foot, the driver exited the vehicle, at which point the deputy recognized him as Combs and directed him to show his hands. (R. 20 at 3.)

The sheriff's deputies handcuffed Combs and conducted a pat down search "for officer safety." (R. 23-1 at ECF p. 5.) During the pat down, Combs notified the deputy that he had a pistol and drugs in his jacket. (R. 31-5.) Shortly after sheriff's deputies recovered the pistol and a plastic bag containing white blocks which matched the size and shape of the purported narcotics in the photograph provided by the CS. (*Id.* at ECF p. 5, 8, 9.) The deputies also searched the white Ford truck and discovered a "medium-sized lock box" which held (1) a clear tube and plastic bag containing a white powdery substance; (2) a small bag containing two tablets; (3) multiple small baggies; and (4) a digital scale. (*Id.* at ECF p. 5–6.) Back at the Sheriff's Office, after receiving *Miranda* warnings, Combs stated the blocks were fentanyl, the powder was cocaine, and the tablets were ecstasy. (*Id.*) Subsequent lab tests confirmed the white blocks to be 111.56 grams of fentanyl mixture. (R. 23 at 3.)

Defendant Combs was charged with possession with intent to distribute forty (40) grams or more of fentanyl, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm. (R. 1.) In response, Combs brought a motion to suppress all evidence from the search of his person and vehicle. (R. 20.) The matter having been referred to a Magistrate Judge for a suppression hearing and a report and recommendation, Combs now objects to the Magistrate Judge's recommendations, arguing (1) the record does not establish probable cause to arrest at the moment of his seizure by law enforcement; (2) the report and recommendation mistakenly treats probable cause as "subsuming" the reasonable suspicion inquiry; and (3) the record does not establish the pat down conducted by law enforcement was supported by a

particularized suspicion that Combs was armed and dangerous. (R. 33 at 1.) The Court will address each argument in turn.

## II. ANALYSIS

A district court "shall make a de novo determination of those portions of the [report and recommendations] to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636. While the reviewing court must give "fresh consideration" to any findings objected to, it is not required to completely disregard the magistrate judge's conclusions. *Fharmacy Records v. Nassar*, 465 F. App'x 448, 456 (6th Cir. 2012).

### A. Objection 1: Probable Cause at the Time of Defendant's Seizure

Defendant Combs disagrees with the Magistrate Judge's conclusion that sheriff's deputies had probable cause to arrest him "at the moment the deputies confirmed it was Combs who had arrived" at the predetermined drug transaction site. (R. 33 at 2 (quoting R. 32 at 5).) Combs challenges the sufficiency of facts cited by law enforcement to establish probable cause, arguing there was no substantial nexus between his activity and suspected drug trafficking at the time of arrest. (*Id.* at 3–4.) Instead, Combs argues the arresting officers relied on facts made known to them after his seizure and pat down to develop probable cause. (*Id.* at 4.)

Law enforcement may make a warrantless arrest in a public place if they have probable cause to believe an individual has committed or is in the process of committing a felony. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). The probable cause determination is based on "reasonable conclusion[s] to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Pringle*, 540 U.S. at 371). Information from a confidential source may establish probable cause when it is "sufficiently detailed and

corroborated by the independent investigation of law enforcement officers." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998).

Testifying at the suppression hearing, Sheriff Skeens listed the facts which gave his deputies probable cause to arrest Combs. A CS—who had recently provided actionable information leading to another narcotics arrest—notified the Sheriff's Office she had coordinated with William Combs to deliver a specific quantity of fentanyl to a specific location at an agreed upon time. The CS gave law enforcement Combs' name and photograph and asserted he was known by her to traffic illicit drugs in the Richmond area. The sheriff's deputies compared the photo provided to Kentucky driving records to verify Combs' identity, confirmed the make and model of Combs' personal vehicle (as described by the CS) through visual surveillance at his known residence, and researched Combs' criminal history to evaluate the CS's claims and assess potential threats to officers. The CS continued to provide information, giving updates on the drug contact's progress from Richmond to Lancaster, sending screen captures of their text messages discussing narcotics trafficking, and even forwarding a photograph provided by the trafficker purported to be "a pic of all the dope." (*see* R. 30 at 16:18; R. 31-1.) Staged and anticipating Combs' arrival at the Citgo, sheriff's deputies observed a white Ford truck pulling into the gas station while simultaneously receiving word from the CS that the trafficker texted he had arrived. The deputies ran the truck's license plate number and determined the vehicle was registered in Richmond, giving them further cause to believe Combs could be the driver. Finally, when a sheriff's deputy approached, a man the deputy recognized to be Combs exited the vehicle.

While individually insufficient to establish probable cause, the facts above viewed in the aggregate and in the light of circumstances leading up to Combs' arrest "support[ed] a belief by the officers that the [Defendant] was engaged in criminal activity[.]" *Beck v. Ohio*, 379 U.S. 89,

95 (1964); *see also United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007). Accordingly, the sheriff's deputies had probable cause to arrest Combs for suspected narcotics trafficking once they positively identified him at the time and place arranged for the drug transaction. This objection is overruled.

**B. Objections 2 & 3: Reasonable Suspicion to Detain and Search**

Defendant Combs continues his objections to Judge Stinnett's conclusions, arguing the sheriff's deputies not only lacked probable cause to arrest, but lacked even the reasonable suspicion necessary to conduct a *Terry* stop and frisk.[3]

**1. The sheriff's deputies had reasonable suspicion to conduct a *Terry* stop.**

Combs first challenges the CS's reliability, highlighting how the source had only provided information to the Sheriff's Office on one prior occasion. (R. 33 at 6.) He points to inconsistencies between the amount of narcotics expected (4 oz.) and the amount seized (approximately 3.94 oz.), the vehicle expected by officers on scene (El Camino) and the vehicle Combs was driving (white Ford truck) at the time of arrest, and how the CS never mentioned him by name in their text exchanges. (*Id.* at 5–6.) Combs also asserts "the deputies on scene did not know [his] criminal history before seizing him;" citing to body camera footage where an arresting officer asks Combs if he is a convicted felon. (*Id.* at 6.)

To conduct a *Terry* stop, law enforcement "must have a reasonable suspicion of criminal activity." *Campbell*, 486 F.3d at 954. This suspicion need not be correct or even "more likely true than false[,]" but must be reasonable under the totality of the circumstances and "supported by

[3] *Terry v. Ohio*, 392 U.S. 1 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person"); *U.S. v. McCallister*, 39 F.4th 368, 373 (6th Cir. 2022) (quoting *U.S. v. Pacheco*, 841 F.3d 384,390 (6th Cir. 2016)) ("[t]he Fourth Amendment's prohibition on 'unreasonable searches' likewise permits precautionary searches for weapons following a lawful *Terry* stop, known as *Terry* frisks, where there is 'reasonable suspicion that the person searched may be armed and dangerous'")

articulable facts[.]" *Id.* at 954–55; *McCallister*, 39 F.4th at 373. It is not a "mere hunch," an "intuition," or a "gut feeling." *Id.* at 374.

The Magistrate Judge found, and this Court concurs, there was probable cause to arrest the Defendant when he was positively identified based on the facts articulated above. Because the standard for probable cause is "more stringent" than the reasonable suspicion standard, it follows that the sheriff's deputies had adequate justification to conduct a *Terry* stop. *Campbell*, 486 F.3d at 954–55 (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)). While the Sheriff's Office was operating with limited information, the details provided by the CS—which were corroborated by the deputies' follow-on investigation—were more than sufficient to establish reasonable suspicion Combs was engaged in criminal activity and to justify detaining him long enough to conduct a lawful *Terry* stop to confirm or dispel their suspicions.

This objection is overruled.

**2. The sheriff's deputies conducted a lawful search.**

Defendant Combs lastly challenges the Magistrate Judge's determination that sheriff's deputies conducted a lawful pat down. (R. 33 at 6.) He argues the deputies had no information connecting him to text messages discussing narcotics trafficking, no indication he was armed and dangerous, and no observations of threatening conduct. (R. 33 at 8.)

Incident to lawful arrest, law enforcement may conduct a warrantless search of an "arrestee's person and the area 'within his immediate control.'" *United States v. McCraney*, 674 F.3d 614, 618–19 (6th Cir. 2012) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). This warrant exception allows the arresting officer to search for and seize "any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape[,]" or evidence the arrestee

might attempt to conceal or destroy. *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011) (quoting *Chimel*, 395 U.S. at 763).

Again, this Court finds that the sheriff's deputies had probable cause to arrest Combs when he was positively identified after arriving at the gas station. And if Combs was merely seized when deputies placed him in handcuffs upon recognition,[4] they had further probable cause to arrest when he willingly disclosed that he had a handgun based on their prior knowledge of his convicted felon status. Because this was a lawful arrest, the deputies were permitted to conduct a search incident to the arrest to secure any weapons or evidence on Combs' person and within his immediate control.

However, even if the deputies lacked probable cause to arrest (as Combs argues), law enforcement personnel are still authorized to pat down or "frisk" a suspect if they have reasonable suspicion to believe he is armed and dangerous. *United States v. Noble*, 762 F.3d 509, 523 (6th Cir. 2014). While reasonable suspicion must be based on articulable facts known to an officer at the time of the search, the officer is not required to be certain the suspect is armed. *Campbell*, 486 F.3d at 954–55. Rather, the standard is "whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. When making this threat assessment, officers may rely on their training and experience. *United States v. Keeling*, 783 F. App'x 517, 523 (6th Cir. 2019). This includes training and experience that "drug dealers frequently carry weapons[,]" but this presumption must be corroborated by facts indicating the suspect is involved in the illicit drug trade. *Noble*, 762 F.3d at

[4] The Parties' disagree on precisely when Combs was arrested. "[D]uring *Terry* stops concerning narcotics transactions, officers are entitled—without probable cause—to remove suspects from a vehicle immediately and place them in handcuffs as a precaution." *U.S. v. Slaughter*, 751 Fed. App'x 659, 662 – 63 (6th Cir. 2018) (citing *U.S. v. Marxen*, 410 F. 3d 326 (6 Cir. 2005)).

523. Contraband discovered in plain view or by "plain feel" while searching for weapons may be seized as evidence without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993).

Sheriff Skeens testified Defendant Combs' criminal history was "extensive and involved a history of drugs and weapons." (R. 30 at 16:18.) He also cited the text messages and photos relayed by the CS, as well as Combs' arrival at the right place and time for a scheduled drug transaction, as evidence of active participation in narcotics trafficking. (*Id.* at 22:48.) The Sheriff then added that "guns and drugs go together," which he listed as a factor that heightened officer safety concerns. (*Id.* at 24:04.) Finally, when detained and asked "Where's it at?" Defendant Combs willingly responded, "There's a gun in one pocket . . . I'm just telling you, that way you know." (R. 31-5.) This combination of photographic evidence, ongoing communications related to drug trafficking, a known criminal record involving guns and drugs, suspicious conduct by the Defendant, law enforcement training and experience indicating a heightened risk of gun violence, and Combs' admission all coalesced to establish a reasonable belief that Combs was armed and potentially dangerous. This in turn justified a *Terry* frisk for officer safety.

Under the probable cause or the reasonable suspicion standard, sheriff's deputies conducted a lawful stop and search of the Defendant's person. Accordingly, the contraband seized is admissible as evidence.

This objection is overruled.

## III. CONCLUSION

For the reasons provided in Judge Stinnett's report and recommendations (R. 32) and the reasons outlined in this opinion, the Court hereby ORDERS as follows:

1) Comb's objections (R. 33) to Judge Stinnett's recommendation are OVERRULED.

2) The Court ADOPTS Judge Stinnett's recommendations (R. 32) as the opinion of the Court, and the Defendant's motion to suppress (R. 20) is DENIED.

3) The time between filing of Defendant's motion on June 23, 2026, and the Court's resolution of the motion is excluded in computing the time within which the trial must begin pursuant to 18 U.S.C. § 3161(h)(1)(D).

4) This matter will be set for JURY TRIAL by separate order.

This 3rd day of November, 2026.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***Karen K. Caldwell*** KKC

**United States District Judge**